The 4th District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinnick presiding. This is our case number 4220206, City of Geneseo v. Pyrotem Properties. Would the attorney for the appellant please state your name and introduce yourself to the court. Thank you, Your Honor. Keisha Douglas, I'm the appellant, Pyrotem Properties, and I'm the regressor. Thank you. And for the appellee? Thank you. I'm Megan Mack, attorney for the City of Geneseo. All right. All right. Ms. Douglas, you may proceed. Thank you. May it please the court and counsel. As this court is aware, this is an appeal involving a review of a 2619 motion to dismiss and a motion for summary judgment. Both parties agree the standard of review is de novo. As this court is well aware, in considering a 2619 motion to dismiss and a motion for summary judgment, all facts and all inferences therefrom must be viewed in the light most favorable to the non-moving parties, which in this case are Pyrotem and Ressler. If any genuine issue material fact exists, a 2619 decision and a motion for summary judgment are included. You are cutting out somewhat, and I don't know if it's the microphone or how close you are to it, but I've understood what you've said, but every once in a while a word kind of, there's kind of an ellipse, I suppose I'd say. Go ahead with your argument. Go ahead. I'll try to speak up. Thank you, Your Honor. Pyrotem and Ressler respectfully submit at a minimum a genuine issue and material fact exists which prohibits the 2619 dismissal and the motion for summary judgment. Account one of the counterclaims states a claim under section 1983 for deprivation of constitutional rights, namely Pyrotem and Ressler's procedural and substantive due process rights and the city's abolition of the subject property. That was then noticed with the opportunity to object in which demolition constitutes an unlawful taking by the city. Additionally, at issue one of the counterclaims is the city's conduct of removing personal property items from the subject property which had value, the city later auctioned these items off, retained the proceeds of the auction. This was done again without notice, without an opportunity to be heard, and constitutes an unlawful taking by the city. Let me interject or ask a question at this point. In simplest terms, I think the city says you had notice, you didn't do anything about it. Or you didn't do what they indicate the statute requires. You're taking a position that what that that notice was inadequate, or are you taking a position that even if that's true, you have the right to pursue a remedy because of what the city did. So our argument has many layers to it. One, obviously, the first layer is, I guess it's actually a second layer. The first issue is we don't believe the notice was sufficient under the procedural due process. You're talking about the original notice? Yes, Your Honor. Because the certified mailings to Pyrotim and Resser were returned to the sender unclaimed. After they were returned to the sender, the city did not take sufficient steps to notify, to ensure Pyrotim and Resser received notice of the intended action. It's undisputed, there's an affidavit of Mr. Resser in the court record stating he did not have prior notice of the city's intended action. Ms. Douglas, let me stop you there and ask you, did they not comply with the statutory requirements of notice? What else did you want them to do? Yes, they have consistently alleged that they complied with the statutory requirements, and we see that they did comply with the statutory requirements. However, the U.S. Supreme Court in Jones v. Flowers, which is referenced in our brief, the Supreme Court stated that we have required the government to consider unique information about the intended recipients, regardless of whether a statutory scheme is reasonably calculated to provide notice in the ordinary case. When the government has knowledge that notice pursuant to the normal procedures was ineffective, this triggers an obligation on the part of the government to take additional steps to effect notice, and that's our contention here. Once those certified mailings were returned, the record is clear. The city at all times knew of the whereabouts of Mr. Resser, the city had Mr. Resser's personal cell phone number, the city was aware Mr. Resser was the only point of contact for Pyrotim and the subject property. In fact, during preparation for demolition, there was another vehicle on the property, and the city representatives ran the license plate of that vehicle, obtained the owner's information, called the owner, and said, come move your vehicle before we tow it. That same treatment was not provided to Mr. Resser. The city could have equally called Mr. Resser and informed him of the city's removal actions, and informed him of the city's intended demolition actions. What we're stating is that even if the statutory notices were sent, they weren't received, and under the circumstances, which is the requirement, the procedural due process requirement, that notice must be reasonably calculated under all circumstances to approve the intended pendency of the actions and afford them an opportunity to present their objections. It's our position that because we have alleged sufficient facts to show that the city, our position that the city should have taken additional action, that creates a genuine issue of material facts that should be submitted to a jury. Council, let me ask you, what if defendants just said we're not signing for it? Does that make any difference? Is that a problem with your argument? I don't believe that that was the issue that the, I don't, those are the facts before us. So I haven't really considered those facts because all of them just said unable to forward for whatever reason for the certified mailing. Okay, those aren't the facts. What do you mean by that? We know it was mailed, return receipt requested, and no one signed for it. Do we know anything other than that? No. And my client has stated that he did not receive any certified mailings. He did not receive any U.S. mailings from the city. And so he didn't have prior, actual prior knowledge of the city's intended actions. And as another layer to this, even before we get to the notice issue, Piraten and Resser have submitted facts before this court and before the trial court to show that there's a genuine issue of material facts and whether the city complied with step one of the fast track statute, which requires the corporate official designated to the purge of enforcing the municipalities building code, which was the city building inspector Rick Mills, to determine the building was open and vacant and an immediate and continuing hazard to the community. During Mr. Mills' deposition, we learned, and during the city representative depositions, we've learned that in July of 2019, the city council learned that their grant application was approved by the state to obtain grant funding to demolish the subject property, among others. After that receipt was, after that determination was received by city council, city council immediately after meeting determined to move forward with the fast track demolition. On or about October 11, 2019, after that decision was made, the city building inspector created an inspection report with purported code violations based upon a July 11, 2012 inspection of the subject property. This was the same inspection after which the building inspector informed Mr. Resser via letter that is in the court record that states no code violations exist. Ms. Douglas, let me go back to the notice issue, because based on what I heard when you talked about a due process violation here citing the Supreme Court case, you're only saying that the one they could have served was Mr. Resser. Is that correct? In other words, everybody else, there was no one, there was no ability, the city tried to find the registered agent and all that. So your issue is only with Mr. Resser, is that correct? Yes, Your Honor. Now, Mr. Resser, as I recall reading this, he was not listed, the city pulled a title search, he's not listed as the owner or the lien holder, but because they were familiar with him, they knew about him, they actually put him on the service list. But under these facts, was there really a requirement for the city to serve Mr. Resser? I think based upon the knowledge that the city had dating back to 2008 or 2010, which are in the court records, that every citation that was ever issued to this property, Mr. Resser. But he's not an owner or lien holder, what is his interest in this property? He is the sole owner and manager and member of Pirate Tent Properties, LLC. But he was not on, as far as this demolition order here, he was not on the subject properties title. So if I do a search for him to find out who are all the people I need to notify because of all the conditions here, he is, the city would never find his name. They happen to know of him, and that's why they tried to serve. That's correct. I believe that's correct. Thank you. And with respect to the Pirate Tent registered agent, the registered agent that had resigned specifically called and informed the city's legal counsel that it was no longer agent for Pirate Tent. Which really left the only person that had an interest in Pirate Tent to be Mr. Resser. And as stated, there's various all the notices regarding this property from the city and all the letters regarding this property from the city are all addressed to Mr. Resser. And so they had an implicit understanding that Mr. Resser was the only point of contact that they ever had with the subject property for the subject property. And that Mr. Resser had gone to court on citations, remedied citations, remedied purported code violations with respect to the subject property. You're saying that he responded. Go ahead. Sorry, Judge Bridges. Just so that I'm clear, Mr. Resser's only interest in this case because he's listed as a defendant in this matter here is his connection or ownership of Pirate Tent. Yes. Not the actual building. Correct. So that's his only his issue deals with the fact that the property was removed and sold. Yes. I was going to ask Mr. Resser. I think you said he appeared in court or appeared to answer other complaints and other issues over the course of years. Yes. So he received those notices and he responded to them. Yes. Okay. And I believe those prior notices were issued in a form of citation. There's no evidence in the record and the discovery regarding how those citations were served. During the deposition of Mr. Rick Mills, if he had any knowledge of how those citations were served and he did not. Those were served through the city of Genesee Police Department. So, and part of our argument again is that the building inspector testified in his deposition that his inspection report did not demonstrate and did not conclude that the subject property was open. In the notice to remediate that is dated October 17th, 2019. It states in relevant part that the subject property is open and immediate and continuing hazard to the community in which it's located. As detailed in the attached inspection report, which is the same inspection report that the building inspector testified did not demonstrate and did not conclude that the subject property was open. Let me stop you there for a second on open and vacant. Suppose this court doesn't agree with you on notice and we think that the municipality followed the statute. We're now at the foreclosure on the demolishment lien. We're at that stage. So my question is this, if the notice was sufficient, can you still now litigate whether the property was open and vacant as part of the foreclosure action? Even though it was never done under the demolition action because the building's gone, it's demolished. So now we're at the lien stage. So are the elements open and vacant still out there to be litigated? You can still proceed. And if you're successful in showing that it wasn't open, then what? The lien would be vacated? Is that where we are? Does that accurately describe the posture of this case right now? This is an issue of contention between the parties. It was a key finding by the circuit court that the circuit court took the side of the city of Geneseo and holding that because Pyroton and Russer did not object within 30 days after issuance of the notice to mediate. Those objections are now waived and we cannot go back and we cannot relitigate whether the property was open, vacant, and an immediate continuing hazard to the community. Our contention is no waiver occurred. We cited case law stating that a waiver of constitutional and statutory right has to be knowing, voluntary, and intentional. Where my clients did not have any actual notice of the city's intended actions, there can be no knowing, voluntary, intentional waiver of any rights. So it's our contention that it is open to consideration of whether they did have authority under the statute to demolish the subject property. And again, going back, the first step in the process is that the city was required to have this determination by the city building official. Our contention is the record state shows that no such determination was made. Therefore, the city did not have authority to proceed at all, even issuing the notice to remediate. So it's a twofold situation. Did they comply with step one? And then even if they did comply with step one, are all the defenses regarding the condition of the property, have those been waived? And again, our contention is that those are up for debate and up for determination, and there is no waiver. I would like to touch on the notice to cite or count to the quiet title action. There were three liens involved in that. One was the utility lien, which indisputably has been paid and has indisputably not been released by the city. The second is the mowing lien. Pyroton and Russer have identified the requirements for the city to be entitled to a mowing lien. The city has failed to provide any evidence to satisfy those elements of the mowing lien. So those two liens should quiet title actions should not have been dismissed. As for the demolition lien, the undisputed evidence in the record is the city hasn't been damaged. They applied for a grant. They received a grant. They have been reimbursed false hospitalization. Therefore, there is nothing to enforce. They have to demonstrate damage. They have to demonstrate cost incurred and damage. They cannot, as a matter of law, do that. And they have failed to provide any authority that they have any type of legal obligation to try to recover those funds to pay those back because that requirement simply doesn't exist. Therefore, it's a nonstarter for the foreclosure petition. Summary judgment should not have been given. And count one and some of the differences should not have been dismissed. As far as the toward immunity act, there's judicial admissions in the record by the city administrator in the building inspector that the decision to demolish the decision. The statute was a decision of the city council, the legislative body of the city. And Mr. Mills was simply carrying out those decisions and determinations. Therefore, the court immunity act is inapplicable. And I know I'm low on time. So I will conclude. Thank you. Thank you, counsel. We'll have time on rebuttal as Mac. Good afternoon, your honors. Thank you. May it please the court, Megan Mac on behalf of the city of Geneseo. As you correctly just referred to this case started with the filing of the city's foreclosure petition and that was on our fast track demolition lien. Just to note, the fast track demolition process started in October 17 of 2019. You have seen an affidavit from Mr Rester that he first learned of the demolition on the property from a cop, a colleague that observed the demolition process. After the demolition was completed on February apologize jumping all over my notes here. February 14, it was completed. I'm sorry six it was completed. The city had until February 14 to completed under the statute. We filed this foreclosure petition may 15 of 2020 and no time in between that to Mr Rester ever contact the city to even complain that his house had been demolished. I submit to you that's because he was aware of it. He was aware because he chose not to open that certified mail. As you have already questioned. Miss Douglas on the city did send certified and regular mail to all of the addresses that it could find for pirate town properties. It was not obligated to send to Dean Resser as he was not a holder. But why did why did they send all the other notices to him. We, I'm sorry, which notices, Your Honor. Well, all these citations that were referred to. I mean, that's in the record. So prior to the fast track demolition, all of those citations would have been taken would have been sent to Mr Resser from people at City Hall. When we initiated this we actually pulled title, and that's the title commitment showed that there was no actual relationship to the property was all through pirate and properties. And so, that's why I'm conforming to the statutory requirements. It was more appropriate that pirate and properties be served, or I'm sorry not be served but that they certified mail be sent to pirate properties, and that's why we bent over backwards to do that. You also said he refused to open it. That's my, that's my belief. I, it's well that isn't in the record. I would agree with you, judges not in the record. What I think is interesting though is that all along, prior to this case as well as even after when we started the foreclosure proceedings, every, everything that the city sent to Mr Resser was to this 323 he got there. So, it's interesting that the certified mail was the only thing that then came back to us. So, Miss Mac, if I can ask you this. I've read, as all of you have section 1131 one. And I don't find any limitation period that would bar defendants counterclaims. In this case, so under what statutory basis do you find such a limitation. We believe that there's a 30 day period to contest this based on the fact that that's how the statute was written that within 30 days you need to file something with the circuit court if you want to stop the fast track demolition. Otherwise the city is not empowered to go ahead and demolish that building so at that point, there's the court if you were to then file into the circuit court something to stop that fast track the circuit court wouldn't actually have jurisdiction to take a pleading related to stop that. Let me ask you this because isn't that position that you've taken at odds with, I believe that section 147 of chapter 65 of the municipal code that provides that municipalities can be liable for wrongful demolition, even when it's pursuant to a valid So that seems to say that even though this statute provides 30 days, which, again, I still don't see as a limitation that there is a remedy or recourse for individuals that believe the property has been wrongfully demolished. I do agree with the with you Your Honor in that one dash four dash seven under the municipal code does allow for a wrongful demolition action. However, that was never pled in any of this case, the first time that one dash four dash seven was alleged was in the elements, or what was contained, which made up the open and vacant her open and vacant arguments. Those actually were all related to Kate those I believe that she's citing the Ballenger city of Danville case in the harvest church of our Lord case, and both of those cases specifically had actions or wrongful demolition under section one dash four dash seven, and that's just simply not the argument here. That was never alleged. Let's assume this wasn't demolition situation that we have here, but rather it was one where it was remedial repairs or to remove debris or unhealthy material. And so you're saying that if the property owner in that case didn't respond within 30 days they would have no recourse, they couldn't come into court and argue about the repairs because the statute allows not just demolition repairs. So it would seem to me that they would still have the ability to seek, you know, a court approval of what is going on, or what has happened to the property. I think the intent of the statute was to allow for these unusual circumstances where the city feels there's an immediate danger and hazard to the community. And as I was going to get into my argument about the open and vacant, the building inspectors opinion was that this building did create that there was a tree growing underneath the structure of the property. You could not physically see the door as you walk to the property because there was so much breath and overgrowth. In that case, it was not safe for law enforcement and emergency personnel if they needed to respond to try and get there, because the structure of the building was compromised from the tree growing underneath. We had open windows where again trees were were growing in to the property. This, this unique subsection of the municipal code allows for municipalities to take action quicker than if they were to choose to do so under subsection A. And so the legislature as they crafted this little subsection E of the code provides that this that the city has an obligation to to complete notice in many forms. It's, it's not a quick process to go through publication, certified mail recording, and well as posting and then, therefore, there's only 30 days to respond but after that I, I believe you don't have standing men to contest it. Well, I know you're in the record. Where the inspector talked about, I believe he said the windows were not properly sealed because he saw exterior growth. But the issue I have here is, is that the building inspector testified that he first entered the building on January 30, seven days before the demolition, and he had to pry open the back door. So, what makes this open in the vacant. Because, in fact, it seems though from his testimony. This was all sealed up. Two things your honor one vacant in that no one was inhabiting there. And just because you leave belongings or personal facts in there does not mean that the residents was occupied, you'll also see that he also testified that there had been no property maintenance term where the windows are open allowing for trees and limbs to pierce those windows, and as he also did testify to. There were animals inside the property so open to the elements doesn't necessarily always mean that just because an animal can get in there the building inspector could get in, without having to have a crowbar or pry bar to open the doors but it was some of the cases that were cited by Council. I would just like to point out the differences. She talked about Jones the flowers, and that the error. An elevated duty on what is deemed to be service. And I would just let you just also recite something from that case the court also explained in Jones the flowers that there were several reasonable steps that could have been taken when certified letters to Jones were returned unclaimed, and the steps that they cited where notice could have been resent by regular mail in here, notice was sent that way to notice could have been posted on the front door here we know it was posted on the property. Three notice could have been addressed to the occupant and again we know that that was also done. Several of the cases that are cited. Also, one being Doonesbury, which was a case involving a cash forfeiture. The court stated there that due process does not require heroic affirmance by the government to assure the notices delivery. And that is the case here that the city had a duty to send certified mail, but this, the city did not have an obligation to ensure that that certified mail was received. And because the city had complied with all the other statutory obligations as to notice it had complied with that. And in addition, the city had also invited Mr Resser to a meeting, Mr Resser or anyone from pirate and properties to a meeting at City Hall, which no one from that business. Other to attend. I don't know where I am on time. I don't know if you have any questions. I kind of jumped around all of my argument. Apologize for that. Not at all. I don't see any other questions but you still have time remaining wish to make some points. And then, just to, to I think clarify there because I think it is somewhat confusing. Some of the pictures that are attached to the notice to remediate are from 2012. The reason being for that is in 2012 this property was so bad that a court did allow it for an administrative search warrant and that's when the inspector did have actual entrance to the property. So when he wrote his inspection report in 2019 he was taking those photographs from the exterior of the property, you're correct. Judges in that when he was not able to go back into the property until January, and that was as a well being. Check prior to the demolition, but he was able to confirm from his peripheral walk around the property and from peering into the windows because there were open elements that he could see that there are no permits pull it will he knew there had been no and that there have been no activity on the property in towards of a repair, and that the conditions had only gotten worse over the years, which was accompanied by all of the complaints that the city continue to have about this property. As to the IDA grant that the city did apply for they applied for IDA grants for several properties. The city council did decide to use IDA grant for the demolition of this property, knowing that if it was going to go to foreclosure on the lien that the IDA grant would be paid back. However, the city didn't make that decision until the building inspector had an opportunity to weigh into the conditions of the property and inform the city council as to the, the nature and conditions that exist on that property as well. I think I've hit most of my arguments even though I didn't do so in a very careful way I apologize. That's all right, we asked you questions, are you have you concluded. And yes, thank you. All right, we'll hear from you on rebuttal Miss Douglas. Anyone has any questions, please let me know. I do find it interesting that the city's council references unusual circumstances, this was such a hazardous property. What was hazardous about this, there was an inspection done in 2012. After that inspection, a letter was issued to Mr. Resser saying no code violations exist. Then, however many years later seven years later the city all of a sudden gets a grant to demolish the property, and now all of a sudden it's an urgent hazard to the community. The building inspector testified his inspection report from 2019 is based in large part upon his 2012 inspection of the property. It doesn't make sense we cannot reconcile these situations. And again, the record shows the city, never considered using subsection a of the statute, which requires a petition to a court, requesting a court order to remediate the property. That would ensure that there is due process, the interest of the person who served, an opportunity to be heard. That subsection a is for dangerous and unsafe properties. And the courts have looked at that and analyze that in comparison with subsection e. There is a difference between dangerous and unsafe, and an immediate and continuing hazard to the community, which we don't have here, a tree growth supposedly growing under foundation, which is not in the record, by the way. There's no record that this is structurally sound. So, the building clearly did not meet the standard. There's emails in the record between city representatives and the hospital, which is adjacent to the subject property, and who's interested in purchasing the subject property about how can we acquire title to this property. This was the only attempt to acquire title to the property, not to recovery costs, because those demolition costs have already been covered by the city. The intent was an unlawful taking. And that's what we have here. Ms. Mack mentioned, well, Mr. Lester knew of the demolition and said he didn't complain about it. What was he going to structure was, you know, what was his objection going to be to the city? What difference would that have made? It wouldn't have made a difference. That's my that's my position. As soon as Max argument that subsection E foreclosures judicial review of the city's actions. I don't read that subsection barring judicial review of the city's actions. And a period of time for an opportunity to be heard. Clearly, Mr. for summary judgment as to several issues that the trial court did not move on and consider. So that would be determination and to narrow down what the genuine issues of material fact are and really what we need from this court is. You know, is this reviewable is the city's actions reviewable? Is it an issue of fact for the jury to determine, or the trial is a fact to determine whether the condition of the property was adequately met to authorize the city to move forward with the mission. The circuit court seems to think that all of those arguments are barred because of the statute, because prior to him and Ruster somehow waived their right to make any objections under the statute. So, that's a major determination that we're looking for from this court as far as instructions, but it would be definitely more discovery and ultimately. And as far as the city's arguments regarding the open windows, there's in the record any open windows. The only evidence of the record is the windows weren't properly sealed. There's also no evidence in the record regarding animals inside the property. There was a corner. I'll conclude. Thank you. Sorry. Thank you. We'll take this matter under advisement. We thank you for your arguments.